STATE OF WEST VIRGINIA

*In re* **D.H.**

**No. 19-0995** (Raleigh County 17-JA-187-K)

**FILED**

**June 24, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.H., by counsel Dennie S. Morgan Jr., appeals the Circuit Court of Raleigh County's September 17, 2019, order terminating his parental rights to D.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court lacked sufficient evidence to adjudicate him of abandonment and terminate his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The case below was initiated in July of 2017, when the DHHR filed an abuse and neglect petition against the child's mother and other adult caregivers upon allegations of substance abuse, improper supervision, unsuitable living conditions, and other allegations. At that time, the DHHR did not include any allegations in regard to petitioner. By June of 2018, the child's mother had voluntarily relinquished her parental rights to the child. At that time, petitioner, a resident of Alabama, failed to assume custody of the child. As a result, the DHHR filed an amended petition in September of 2018 alleging that petitioner abandoned the child. Specifically, the DHHR alleged that during the hearing in June of 2018 during which the mother voluntarily relinquished her rights, "it was determined that [petitioner] could pick up" the child because of the lack of allegations against him at that time. However, the DHHR asserted that it had not heard from petitioner since that hearing and that it eventually learned that petitioner was incarcerated. According to the DHHR, the child "could have reached permanency in June" of 2018 if petitioner had assumed custody. The DHHR further alleged that petitioner provided no child support and that his lack of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

cooperation with the DHHR required it to file a petition against him alleging abandonment. The DHHR further indicated that the child did not know petitioner "very well."

At an adjudicatory hearing in February of 2019, the DHHR presented testimony from a Child Protective Services worker who testified to petitioner's failure to contact the DHHR for approximately six months following the mother's voluntary relinquishment of parental rights. According to this witness, the DHHR contacted petitioner's counsel, who was also unable to make contact with petitioner. Further, the witness testified that both the child and the child's grandparents confirmed that petitioner had only seen the child twice during the child's life. The witness also addressed petitioner's lack of participation in the proceedings, including petitioner's failure to drug screen so that he could visit the child in January of 2019, despite being in West Virginia at the time.

Petitioner then testified and denied abandoning the child. Instead, petitioner alleged that the mother denied him access to the child, testifying that "it had always been a constant struggle" to see the child. Petitioner asserted, however, that he "made telephonic calls to his son." According to petitioner he visited the child twice a year and lived in West Virginia for approximately three years after the child was born, during which period he exercised visitation with the child. Petitioner also testified that "through D.H.'s life[,] he . . . sent money, clothes, and [C]hristmas gifts." Petitioner provided details about his incarceration that prevented him from taking custody of the child and indicated that it was a result of charges of driving on a suspended license and that he was incarcerated for approximately two months. Petitioner admitted, however, that he had not provided any support to the child since July of 2017, although he asserted that he sent gifts to the child during that period. Ultimately, the circuit court found that petitioner abandoned the child, based upon his failure to visit or financially support the child for several years. Thereafter, the circuit court granted petitioner an improvement period that required that he pay child support as ordered and visit the child, among other requirements.

In June of 2019, the circuit court held a review hearing. Petitioner did not attend due to his incarceration, but he was represented by counsel. In July of 2019, the circuit court held a dispositional hearing, by which point petitioner had been released from incarceration. During the hearing, the circuit court was informed that petitioner wished to voluntarily relinquish his parental rights by filing the appropriate documents and then orally relinquishing his parental rights at a later hearing. As a result, the dispositional hearing was continued. Before the continued hearing could be convened, the DHHR filed a court summary indicating that petitioner had again been incarcerated for escape, having "run away from the police in a hospital." In September of 2019, the circuit court reconvened the dispositional hearing. Petitioner did not attend but was represented by counsel. During the hearing, the DHHR asserted that petitioner did not participate in his improvement period because he failed to visit the child or pay child support. The court also heard evidence that after the parties were ordered to begin the process set forth in the Interstate Compact on the Placement of Children so that the child could be returned to petitioner, petitioner refused to cooperate. Based on the evidence, the circuit court found that petitioner "failed to participate in any way" despite the fact that the circuit court "bent over backwards to help him." Additionally, despite the fact that the DHHR provided assistance, petitioner had "no visitation and no contact with the child." The Court noted that it was sympathetic regarding the distance petitioner had to overcome, but that if petitioner "wanted to protect his interests, he could have." Crucially, the

circuit court found that petitioner provided the child with no support, other than "some gifts on one occasion" and that he "had no contact with the Department and show[ed] no interest" in remedying the issues that necessitated the petition's filing. Because petitioner "demonstrated a decided intent to abandon the child," with whom he had "no relationship and no bond," in conjunction with the fact that petitioner's actions harmed the child, the circuit court found that termination of his parental rights was required. As such, the circuit court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

First, petitioner argues that the DHHR failed to satisfy its burden of proof at adjudication. According to petitioner, the evidence below did not demonstrate abandonment, given that he had previously visited with the child. Petitioner is correct that

> "[West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W. Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, according to West Virginia Code § 49-1-201, "abandonment" is defined as "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." Upon our review, however, we find that the DHHR satisfied its burden of proof in establishing that petitioner abandoned the child.

---

[2]The mother voluntarily relinquished her parental rights below. According to respondents, the permanency plan for the child is adoption in the current foster home.

In support of this assignment of error, petitioner argues that he traveled to West Virginia on January 11, 2019, to deliver gifts to the child. Petitioner cites other similar evidence of isolated contact with the child, including that "there had been a visit to Alabama with" petitioner, in an attempt to establish that adjudication was improper, but none of this evidence is substantial enough to show that the circuit court erred in finding that petitioner abandoned the child. What petitioner fails to recognize is that his late attempts to simply visit the child are wholly insufficient to establish that he did not forego his parental responsibilities. Petitioner also argues that he lived in West Virginia for approximately the first three years of the child's life and exercised regular visitation. It is unclear, however, how petitioner believes that this shows that he did not abandon the child. If anything, this evidence supports petitioner's adjudication, as it shows that he may have once been involved in the child's life, but that he eventually abdicated his responsibilities to the child, who was eight years old at the time of petitioner's adjudication. Further, petitioner's assertion that he did not abandon the child but that, instead, he was denied access by the mother is inconsistent with the evidence and even with petitioner's arguments on appeal. In his brief before this Court, petitioner asserts that "the evidence in the case . . . demonstrated that [he] lived in Alabama and . . . relied on the child's mother in West Virginia to care for the child on a day-to-day basis." Not only does this argument undermine his assertion that he would have provided for the child if not for the mother's intervention, it constitutes a tacit admission of his abandonment. Given that petitioner admits on appeal that he forewent his parental responsibilities in favor of allowing the mother, an individual with severe substance abuse issues, to undertake sole parental responsibilities, it is unclear why he believes that adjudication was inappropriate.

Further, petitioner's argument on appeal ignores the fact that the DHHR did not bring allegations against him until the mother voluntarily relinquished her parental rights and he was not only unable to assume custody of the child but, in fact, made no efforts to do so. Although petitioner repeatedly asserts that the mother denied him access to the child, he fails to provide an explanation as to how the mother could have continued impeding his ability to assume custody of the child in the six months between the mother's voluntary relinquishment of parental rights to the child and petitioner's adjudication. As the record shows, in those six months, petitioner failed to contact the DHHR to inquire about the child, was incarcerated, failed to provide the child financial support, and failed to visit with the child. The record establishes that petitioner continued to abdicate his parental responsibilities for an extended period after the mother no longer had control over the child. Further, the record shows that the child indicated that he did not know petitioner well and, based on statements from the child and the child's grandparent, petitioner had only met the child twice in his life. While it is true that petitioner testified to more contact with the child, the circuit court made a credibility determination after hearing all the evidence and found that petitioner's unsupported testimony was lacking. As we have previously held, "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997). Therefore, we will not disturb such a determination on appeal. Based on the foregoing, we find that petitioner is entitled to no relief in regard to his adjudication for abandonment, as the evidence overwhelming established petitioner's intent to forego his parental responsibilities.

Next, petitioner argues that termination of his parental rights was inappropriate because the circuit court's findings that there was no reasonable likelihood the conditions of abuse and neglect

4

could be substantially corrected and that termination was necessary for the child's welfare were based on insufficient evidence. However, in support of this argument petitioner reiterates essentially the same arguments set forth above regarding his prior visits with the child, his having given the child gifts, and that the mother denied him access to the child. We again find these arguments unavailing. Further, while petitioner correctly cites the definition of "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" set forth in West Virginia Code § 49-4-604(c) (2019),[3] he fails to recognize that West Virginia Code § 49-4-604(c)(4) (2019) provides that circumstances in which there is no reasonable likelihood conditions of neglect or abuse can be substantially corrected include when "[t]he abusing parent or parents have abandoned the child." Given the overwhelming evidence of petitioner's abandonment of the child, it is clear that the circuit court did not err in finding that there was no reasonable likelihood the conditions of neglect or abuse could be substantially corrected. Further, given that petitioner took no action to assume custody of the child following the mother's voluntary relinquishment of her rights, it is clear that the circuit court did not err in finding that the child's wellbeing required termination of petitioner's parental rights so that he could achieve permanency elsewhere.

Pursuant to West Virginia Code § 49-4-604(b)(6) (2019), circuit courts may terminate parental rights upon these findings. Additionally, this Court has held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2019)] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c) (2019)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: June 24, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[3]Although the Legislature amended West Virginia Code § 49-4-604 effective June 5, 2020, including renumbering the provisions, the amendments do not impact this case.